

# HELEN F. DALTON & ASSOCIATES, P.C.
## ATTORNEYS AT LAW

80-02 Kew Gardens Road, Suite 601, Kew Gardens, NY 11415

Tel. (718) 263-9591 Fax. (718) 263-9598

March 22, 2023

**Via ECF**
The Honorable District Judge James R. Cho
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

Re: **Ordonez v. Filippo Vicari Construction, et al.**
**Case No. 22-CV-2543 (JRC)**

Dear Judge Cho:

Our office represents Manuel Ordonez ("Plaintiff") and we submit this motion jointly with counsel for Filippo Vicari Construction Inc. and Filippo Daniel Vicari, Enrico Vicari and Alexandro Vicari (collectively, "the Defendants"), requesting the Court's approval of the parties' Settlement Agreement. The terms of the parties' settlement agreement ("Settlement Agreement"), attached hereto as **Exhibit 1**, were reached following a Court-annexed mediation on February 2, 2023.[1]

The parties submit this motion in support of their position that the Settlement Agreement is fair and reasonable and does not raise any of the concerns cited in *Cheeks v. Freeport Pancake House, Inc*., 796 F.3d 199 (2d Cir. 2015). The parties address the monetary and non-monetary terms as well as Plaintiffs' counsel's requested attorneys' fees and respectfully request that the Court So Order or approve the Settlement Agreement.

### I.    The Monetary Terms of the Settlement Agreement are Fair and Reasonable

#### a.  The Settlement Amount

The parties agreed to resolve all claims asserted in this action, including Plaintiff's counsel's attorneys' fees, which are addressed below, for the global amount of $87,500.00.

#### b.  Plaintiff's Position

---

[1] The parties have submitted the Settlement Agreement unsigned, but can supplement this motion with a fully-executed copy of the Settlement Agreement within one week or on or before March 29, 2023.

Plaintiff brought this action against Defendants alleging violations of the Fair Labor Standards Act ("FLSA") and New York Labor Laws ("NYLL"). In general, Plaintiff alleged that, as a former landscaper of Defendants, that he was not paid proper overtime rates of pay when they worked in excess of forty (40) hours per week.

As the Complaint was filed in May 2022, Plaintiff's claims under the FLSA and NYLL statutes of limitations commenced in May 2016. Within the relevant statutory period, Plaintiff alleged that he was employed by Defendants as a cement worker and laborer from in or around May 2016 until in or around November 2021. Plaintiff further alleged that he regularly worked six days per week and was regularly required to work in excess of forty hours per week, including up to 60 to 72 hours per week.

Although Plaintiff alleged that he worked in excess of 40 hours per week, Plaintiff alleged that he was compensated based on a flat daily rate of pay regardless of the number of hours worker per week or the number of hours worked per day. Plaintiff alleged that he was paid the same flat daily rate of pay for all hours worked per workweek, even for hours in excess of 40 per week. Plaintiff alleged that he was paid daily rates of pay ranging from $140.00 to $180.00 within the relevant statutory period and that he received such payment in cash.

Additionally, Plaintiff claimed that he was entitled to recovery under NYLL §195 for Defendants' failure to provide proper wage notices and wage statements.

Based on the above, Plaintiff alleged unpaid wages in the range of $200,000.00. In advance of the parties' mediation, Defendants provided weekly records of the hours that they alleged that Plaintiff had worked during the relevant statutory period. In general, these records showed fewer days and hours worked than alleged by the Plaintiff. However, Plaintiff strongly disputed the accuracy of these records as he did not review, fill out or sign such records during his employment. Nevertheless, a clear factual dispute existed as to the number of days worked per week by Plaintiff as well as the number of hours worked.

Although Plaintiff was confident that he could succeed on his claims, Plaintiff's preference was for a guaranteed outcome and payment via Court-approved settlement. Plaintiff considered the defenses and records maintained by Defendants, Defendants' financial abilities and the risks and expenses of protracted discovery and litigation. Plaintiff also acknowledged the potential probative value of the records provided by Defendants and their potential effect on Plaintiff's testimony as to the number of hours worked each week. In total, early resolution of this matter was a practical decision by Plaintiff.

### c. Defendants' Position

Defendants deny Plaintiff's allegations but admit that they did not provide wage notifications to Plaintiff and understand that Plaintiff is entitled to statutory damages of $10,000. Defendants kept contemporaneous timesheets throughout Plaintiff's employment which contained the Plaintiff's name, the final date of the week, the check in and check out times, and Plaintiff's signature. Beginning in 2020, the timesheets also included the amount of money paid to Plaintiff for the time period. These timesheets support Defendant's position that Plaintiff never worked seven days per week, never worked on Mondays, and worked far less overtime than asserted in Plaintiff's complaint. Plaintiff has provided no documentation or information supporting his allegation that he worked 20-30 hours of overtime each week.

While Defendants were also confident that they could succeed in defending against Plaintiff's claims, Defendants entered into mediation and settlement negotiations in good faith to avoid prolonged and expensive litigation.

### d.  The Settlement Amount is Fair and Reasonable

FLSA claims may only be settled and dismissed with prejudice under Rule 41 if they are approved by the Court. *Cheeks v. Freeport Pancake House, Inc.,* 796 F.3d 199, 206-207 (2d Cir. 2015). "Courts approve FLSA settlements when they are reached as a result of contested litigation to resolve bona fide disputes." *Kochilas v. Nat'l Merch. Servs., Inc.*, 2015 WL 5821631, at *7 (E.D.N.Y. Oct. 2, 2015) (citation omitted). "Typically, courts regard the adversarial nature of a litigated FLSA case to be an adequate indicator of the fairness of settlement." *Id*. (citation omitted). Furthermore, "[i]f the proposed settlement reflects a reasonable compromise over contested issues, the settlement should be approved." *Id*. (citations omitted). "Generally, there is a strong presumption in favor of finding a settlement fair, as the Court is generally not in as good a position as the parties to determine the reasonableness of an FLSA settlement." *Lliguichuzhca v. Cinema 60, LLC,* 948 F. Supp. 2d 362, 365 (S.D.N.Y. 2013) (citation and internal quotation marks omitted).

The parties have agreed to settle all claims asserted in this matter against Defendants for $87,500.00. The parties believe that this amount is reasonable considering Plaintiffs' claims and the defenses and records maintained by Defendants in this matter. Moreover, the settlement amount was only achieved after a mediation session before a qualified and experienced Court-appointed mediator lasting approximately five hours with all parties present. The parties had genuine, bona fide disputes over the dates of Plaintiff's employment, the number of days and hours worked by Plaintiff, and the pay received by Plaintiff, but negotiated in good faith to resolve these disputes with a fair and reasonable settlement amount.

### II.     The Non-Monetary Terms of the Settlement Agreement are Fair and Reasonable

"In FLSA cases, courts in this District routinely reject release provisions that 'waive practically any possible claim against the defendants, including unknown claims and claims that have no relationship whatsoever to wage-and-hour issues.'" *Gurung v. White Way Threading LLC*, 226 F. Supp. 3d 226, 228 (S.D.N.Y. 2016) (quoting *Lopez v. Nights of Cabiria, LLC*, 96 F. Supp. 3d 170, 181 (S.D.N.Y. 2015)). Moreover, "[i]n the context of an FLSA case in which the Court has an obligation to police unequal bargaining power between employees and employers, such broad releases are doubly problematic." *Martinez v. Gulluoglu LLC*, No. 15 Civ. 2727 (PAE), 2016 WL 206474, at *2 (S.D.N.Y. Jan. 15, 2016) (quoting *Camacho v. Ess-A-Bagel, Inc.*, No. 14-cv-2592 (LAK), 2014 WL 6985633, at *4 (S.D.N.Y. Dec. 11, 2014)).

Here, the release in Paragraphs 7 ("Wage and Hour Release") of the Settlement Agreement is appropriately-tailored to claims under the FLSA, NYLL and their associated regulations. The Release does not raise any concerns regarding unequal bargaining power between Plaintiffs and Defendants, and the Release is not overbroad such that there is a concern that Plaintiffs are releasing any and all possible claims against Defendants, including claims unrelated to the claims asserted in this action.

Furthermore, the Settlement Agreement does not contain any confidentiality provision that would otherwise preclude Plaintiffs from openly discussing their experiences litigating this matter as rejected by *Cheeks*.

As the Release is carefully drafted to comply with Second Circuit case law in FLSA matters and there is no confidentiality clause contained in the Settlement Agreement, the parties' position is that the non-monetary terms of the Settlement Agreement are also fair and reasonable and comport with the standards articulated in *Cheeks*.

### III.    Distribution to Plaintiff and Requested Attorneys' Fees and Expenses

#### a. Distribution to Plaintiff

The parties agreed to a global settlement of $87,500.00 to resolve all claims asserted against the Defendants in this action. If the Agreement is approved by the Court, Plaintiff will recover $57,254.00 after the requested attorneys' fees and expenses.

#### b. Requested Attorneys' Fees and Expenses

Plaintiff's counsel respectfully requests $1,619.00 for identifiable expenses, which include:

- the Eastern District of New York filing fee in this matter: $402.00
- the cost of the Court-annexed mediation: $375.00
- the costs of attempted and actual personal service and service through the Secretary of State on all Defendants: $842.00

Additionally, Plaintiff's counsel respectfully requests one-third of the settlement less the expenses ($85,881.00), or $28,627.00 in attorneys' fees, as agreed upon in Plaintiff's retainer agreement with this firm. Therefore, if this request is approved, the total amount to be paid to the attorneys for their fees and expenses in this matter is $30,246.00.

As such, the settlement funds as broken down into its component parts is as follows:

**Settlement Amount:** $87,500.00
**Attorneys' Expenses:** $1,619.00
**Net Settlement Amount:** $85,881.00 ($87,500.00 - $1,619.00)
**Requested Attorneys' Fees:** $28,627.00 ($85,881.00 / 3)
**Total payable to Attorneys:** $30,246.00 ($28,627.00 + $1,619.00)
**Total payable to Plaintiff:** $57,254.00 ($87,500.00 - $30,246.00)

Plaintiff's attorneys and their client have a retainer agreement that is reduced to writing and is signed by the client. Attorneys' fees of 33% on FLSA and NYLL claims are routinely approved by courts in the Second Circuit. *See, e.g., Calle v. Elite Specialty Coatings Plus, Inc.,* 2014 U.S. Dist. LEXIS 164069 (E.D.N.Y. Nov. 19, 2014) (approving settlement of FLSA and NYLL claims stating that a "one-third contingency fee is a commonly accepted fee in this Circuit"); *Rangel v. 639 Grand St. Meat & Produce Corp.,* 2013 U.S. Dist. LEXIS 134207 (E.D.N.Y. Sept. 19, 2013).  Courts in this District typically approve a fee of one-third or less of the settlement amount. *See Santos v. Yellowstone Props, Inc.*, 2016 WL 2757427 at *4 (S.D.N.Y. May 10, 2016). The retainer agreement is attached hereto as **Exhibit 2**.

This request for attorneys' fees is supported by the work performed by Plaintiff's counsel throughout the litigation of both matters and the recovery secured through their efforts. Plaintiffs' counsel has zealously advocated for their client throughout the litigation process and believe that the settlement amount secured is a product of their efforts. Furthermore, the fee requested is reasonable in relation to the recovery received by Plaintiff. Lastly, in support of this fee request, please find Plaintiff's counsel's contemporaneous time records, qualifications and lodestar calculation attached hereto as **Exhibit 3**.

### IV.    Closing

In closing, the parties believe that the settlement amount and the terms of the Agreement are fair and reasonable. The settlement was the product of back-and-forth negotiations between experienced counsel with the assistance of the Court-annexed mediation program and the Court's Settlement Conference. As such, we respectfully request that the Court approve the Settlement Agreement. We thank the Court for its consideration and remain available to provide any additional information.

Respectfully submitted,

*James O'Donnell*
James O'Donnell, Esq.